People v Lucas (2024 NY Slip Op 02843)

People v Lucas

2024 NY Slip Op 02843 [42 NY3d 1055]

May 23, 2024

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 19, 2025

[*1]

The People of the State of New York, Respondent,
v
Antwyne Lucas, Appellant.

Argued April 18, 2024; decided May 23, 2024

People v Lucas, 215 AD3d 763, affirmed.

HEADNOTES

Crimes
Right to Counsel
Effective Representation
Failure to Impeach Prosecution Witness with Prior Inconsistent Statement
Record Inadequate to Establish Ineffective Assistance

1. The record on direct appeal in defendant's robbery prosecution was inadequate to establish that defendant's trial counsel rendered ineffective assistance by failing to impeach a detective, who testified that the victim had identified defendant as the gunman in a lineup, with his suppression hearing testimony that the victim was unsure if defendant was the gunman. The contention that defense counsel unreasonably failed to impeach the detective with his own inconsistent testimony was not without some significance, but required consideration of matters outside the record to determine whether this was trial strategy. The possibility could not be ruled out that counsel may have [*2]elected to avoid calling the credibility of a sympathetic victim, a priest, into question during the cross-examination of the detective, and instead opted to focus the jury's attention on a different prior inconsistent statement, namely, the detective's sworn allegation in the felony complaint naming the codefendant as the gunman. Further, counsel may have concluded that raising the inconsistency risked reinforcing to the jury that the victim did, in fact, identify defendant as the gunman at the time of the lineup—even if he did so equivocally—which may have buttressed the detective's assertion that he merely made a clerical error in identifying the codefendant as the gunman in the complaint.

Crimes
Right to Counsel
Effective Representation
Failure to Request Cross-Racial Identification Instruction

2. For the reasons set forth in People v Watkins (— NY3d &mdash, 2024 NY Slip Op 02842 [2024]), defense counsel's consent to the omission of a cross-racial identification instruction prior to the decision in People v Boone (30 NY3d 521 [2017]), which made such an instruction mandatory upon request, did not alone amount to ineffective assistance of counsel.

APPEARANCES OF COUNSEL

Patricia Pazner, Appellate Advocates, New York City (Anders Nelson of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island (Timothy Pezzoli, Thomas B. Litsky, James Joseph Gandia and Rhys Johnson of counsel), for respondent.

{**42 NY3d at 1056} OPINION OF THE COURT

Memorandum.
The order of the Appellate Division should be affirmed.
Defendant Antwyne Lucas contends that his trial counsel was ineffective based on two errors: the failure to request a cross-racial identification instruction, and the failure to impeach a key prosecution witness at trial with his own inconsistent testimony at a suppression hearing. We hold that, on this record, defendant has not established that his trial counsel failed to provide meaningful representation (see People v Baldi, 54 NY2d 137 [1981]; Strickland v Washington, 466 US 668 [1984]).
The robbery for which defendant was convicted occurred in June 2016. At trial, the People played a 911 call in which the victim, a priest heading to his church before morning services,{**42 NY3d at 1057} said that a man had approached him on his left side, pulled out a gun, and demanded his keys, wallet, and cell phone. The victim further reported that a second man approached on the right, "kind of hemm[ing]" him in, and after the victim handed over his property, the gunman punched him, knocking him to the ground, and the men left in the victim's car. When asked for a description of the assailants, the victim said, "It happened so fast, they were two Black, African-American men, they pulled a gun on me." The People also played a surveillance video of the crime at trial, which showed two men cross the street, [*3]approach the victim from behind, and stand on either side of him before the victim fell to the ground and the two men drove off in the victim's car.
Surveillance footage led police to an abandoned house, where they found defendant and his codefendant, Kerry Pack, on the day of the robbery. The victim's cell phone case, along with two hats that appeared to match those worn by the perpetrators, was found in the house. Later that evening, the victim picked defendant out of a lineup. According to the suppression hearing testimony of Detective Alberto Morales, the victim identified defendant as "one of the guys that mugged me," and stated that defendant "could have been the one with the gun," but "he wasn't too sure." The victim did not say anything else in the lineup room, and Detective Morales testified that he had no further discussions with the victim about the identification at that point. The court denied defendant's motion to suppress the lineup identification as unduly suggestive, a ruling that defendant does not challenge on appeal.
In the sworn felony complaint filed the day after the arrest and identification lineup, Detective Morales alleged that "based upon information from [the victim], as well as defendant Pack's own statements," Pack and defendant acted in concert to steal property from the victim and named Pack as the gunman. Defendant and Pack were subsequently charged in one indictment and, at trial, the People pursued both principal and accessorial liability theories, under which defendant could be held criminally liable for the actions of his codefendant if "acting with the mental culpability required for the commission [of robbery], he solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed] such person to engage in such conduct" (Penal Law § 20.00).
At the trial, held in September 2017, the People contended that the victim had accurately identified defendant as the gunman,{**42 NY3d at 1058} and that regardless of who possessed the gun, defendant was acting in concert with Pack to commit the robbery. The victim testified that he had picked the gunman out of a lineup and was "positive" about the identification at that time, but in court he was unable to identify defendant as the person he had previously picked out of the lineup. Accordingly, Detective Morales was permitted to testify on direct examination pursuant to CPL 60.25 that the victim had identified defendant in a lineup. On cross-examination, defense counsel confronted Morales with the felony complaint naming Pack as the gunman, but Morales testified that he had simply made "a mistake," and "got the names mixed up." Morales testified that the victim told him that defendant was the one who held the gun, took his property, and punched him. Defense counsel did not impeach Morales with his inconsistent suppression hearing testimony that the victim "wasn't too sure" whether defendant in fact held the gun.
Defendant testified in his own defense. He confirmed that he was depicted in the surveillance video of the robbery but claimed he "had nothing to do with that." He stated that he had followed Pack in approaching the victim only to ask for a cigarette and change, but Pack unexpectedly pulled a gun, took the victim's property, and knocked him to the ground. Defendant further testified that he then pulled Pack off the victim and fearfully left with him in the victim's car. Defendant denied ever hitting the victim, demanding his property, possessing the gun, or positioning his body to prevent the victim from escaping during the robbery.
At the charge conference, defense counsel requested the pattern jury charge for one-witness identifications, noting that defendant contested the victim's identification of him as the gunman. Over the prosecutor's objection, the court agreed to give the "Witness Plus" identification charge (see CJI2d[NY] Identification—Witness Plus). At the time of trial, that pattern charge included recommended language pertaining to the cross-race effect, to be added to the list of factors affecting the accuracy of identification testimony "if placed in issue by the evidence" (id. [as rev Jan. 2011]). The court stated on the record that "the difference in race . . . was not an issue during the trial" because "there [was] no expert." Counsel responded, "Correct," consenting to the omission of the cross-racial identification charge.
Defendant was convicted on a jury verdict of robbery in the first degree and sentenced. On appeal, the Appellate Division{**42 NY3d at 1059} affirmed (215 AD3d 763 [2d Dept 2023]). As relevant here, the panel concluded that "viewing the record in its entirety, the defendant received meaningful representation" (id. at 764). On this record, we agree.
[1] We cannot conclude that counsel's failure to impeach Detective Morales with his suppression hearing testimony that the victim was unsure if defendant was the gunman establishes ineffective assistance of counsel. "The lack of an adequate record bars review on direct appeal wherever the record falls short of establishing conclusively the merit of the defendant's claim" (People v Lopez-Mendoza, 33 NY3d 565, 573 [2019] [alterations omitted]). Here, the contention that defense counsel unreasonably failed to impeach a key prosecution witness with inconsistencies between his trial testimony and his testimony at the suppression hearing is "not without some significance, but requires consideration of matters outside the record to determine whether this was trial strategy" (People v Nicholson, 26 NY3d 813, 832 [2016]). For example, on this record we cannot rule out the possibility that counsel may have [*4]elected to avoid calling the credibility of a sympathetic victim into question during the cross-examination of Detective Morales, and instead opted to focus the jury's attention on a different prior inconsistent statement, namely, the detective's sworn allegation in the felony complaint naming Pack as the gunman. Further, counsel may have concluded that raising the inconsistency risked reinforcing to the jury that the victim did, in fact, identify defendant as the gunman at the time of the lineup—even if he did so equivocally—which may have buttressed the detective's assertion that he merely made a clerical error in identifying Pack as the gunman in the complaint.
[2] Moreover, for the reasons set forth in People v Watkins (42 NY3d 
635 [2024] [decided today]), the failure to request a cross-racial identification instruction prior to this Court's decision in People v Boone (30 NY3d 521 [2017]), which made such an instruction mandatory upon request, does not alone amount to ineffective assistance of counsel.

Troutman, J. (concurring).
I agree with the majority that, on this record, defendant "has not established that his trial counsel failed to provide meaningful representation" (majority mem at 
1056). However, to the extent that the majority's reasoning conflicts with my dissent in People v Watkins (42 NY3d 
635 [2024] [decided today]), I disagree.
{**42 NY3d at 1060}Additionally, I do not find persuasive the majority's theory as to why counsel may have elected not to "impeach Detective Morales with his suppression hearing testimony that the victim was unsure if defendant was the gunman" (majority mem at 
1059). I find it implausible that counsel would have done so to "avoid calling the credibility of a sympathetic victim into question during the cross-examination of Detective Morales" (id.). By impeaching Detective Morales, counsel would have been impeaching that officer's account, not the credibility of a sympathetic victim.
What truly differentiates this case from Watkins is defendant's choice to take the stand and place himself at the scene of the crime. By doing that, the focus of the defense switched from the victim's identification to defendant's credibility. Being that "the People pursued both principal and accessorial liability theories" (majority mem at 
1057), defendant sought to convince the jury both that he was not the gunman and that he did not participate in the robbery.
The fact that defense counsel did not bolster defendant's credibility in certain ways did not, under these facts, amount to ineffective assistance of counsel. As we have previously stated, "The Constitution entitles a criminal defendant to a fair trial, not a perfect one" (People v Smith, 97 NY2d 324, 330 [2002]). Furthermore, "a reviewing court must be careful not to 'second-guess' counsel, or assess counsel's performance 'with the clarity of hindsight,' effectively substituting its own judgment of the best approach to a given case" (People v Nicholson, 26 NY3d 813, 831 [2016, Rivera, J.]). "The test is 'reasonable competence, not perfect representation' " (id.).
Accordingly, I concur in the result insofar as it affirms the order of the Appellate Division.
Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Halligan concur. Judge Troutman concurs in result in an opinion, in which Judge Rivera concurs.
Order affirmed, in a memorandum.